**BROCKUM COMPANY, A DIVISION OF KRIMSON CORPORATION, and Leidseplein Presse, B.V., a Netherlands Corporation f/s/o "AC/DC"**

v.

**VARIOUS JOHN DOES, Jane Does and XYZ Co.**

Civ. A. No. 88–3728.

United States District Court, E.D. Pennsylvania.

May 19, 1988.

Barry I. Slotnick, Silverman, Shulman & Slotnick, P.C., New York City, Jonathan B. Sprague, Abrahams & Loewenstein, Philadelphia, Pa., for plaintiffs.

## MEMORANDUM

LUDWIG, District Judge.

This is an action to restrain John and Jane Doe defendants from unauthorized selling of T-shirts and other merchandise bearing the name and indicia of a music group, AC/DC, during its 35–city tour of the United States that began May 3, 1988 in Portland, Maine. AC/DC was registered as a federal trademark in 1984 and, according to the complaint, has been in continuous use since 1981. Plaintiffs, owner and licensee of the mark, seek Lanham Act protections, 15 U.S.C. §§ 1114, 1125(a), and enforcement of common law property rights. Defendants are alleged to be unidentified "bootleggers" of merchandise deceptively similar to that marketed by plaintiff Brokum Company—persons who sell their wares at the sites where the concerts are held.

On May 6, 1988 I entered *ex parte* a temporary restraining order and order of seizure, granting plaintiffs their requests for relief, upon counsel's presentation in chambers. At that time, I interlineated the words "within this jurisdiction" to limit the territorial scope of the order—which, as proposed, covered all "stadiums or arenas at which AC/DC shall be performing, including but not limited to the Spectrum in

Philadelphia, Pennsylvania, in connection with the concert to be held on May 9, 1988."[1]

On May 16, 1988 a hearing was held on plaintiffs' application for a preliminary injunction. No defendant appeared. Proof of service of notice of the hearing was not forthcoming, the reason given by counsel being that the "bootleggers" refused to identify themselves. Counsel produced merchandise seized at both the Spectrum concert and at a concert that took place in Pittsburgh on May 15, 1988. The hearing was continued to give counsel time to provide affidavits or other proof of notice or of the inability to give notice. Counsel proffered that the temporary restraining order had been served and the seizures of merchandise effectuated in Philadelphia by plainclothes Spectrum guards. Counsel asserted, in oral argument and by memorandum, that in numerous cases involving group concert tours, federal judges had invariably granted injunctive relief and had done so on a nationwide basis. Counsel also stressed the difficulties involved in obtaining police law enforcement, together with the lack, in these cases, of any appearance in court by defendants.

On May 18, 1988 at the continued hearing, in response to my questioning, plaintiffs' counsel stated that the temporary restraining order was utilized in Pittsburgh in the belief that "within this jurisdiction" referred not to the Eastern District of Pennsylvania, but to the Commonwealth of Pennsylvania. Counsel also denied knowledge of two decisions, *Brockum Int'l, Inc. v. Various John Does*, 551 F.Supp. 1054 (E.D.Wis.1982) and *Rock Tours, Ltd. v. Various John Does*, 507 F.Supp. 63 (N.D. Ala.1981), in which district court judges expressed serious concerns as to concert tour bootleg merchandise injunction actions.[2]

In *Brockum Int'l*, the judge issued the restraining order but "decline[d] the invitation of the plaintiff to issue an order prohibiting the same activity in other cities visited by The Who on its national tour ... [t]hese issues are best left to the local communities involved, and ... an order having nationwide effect would be inappropriate." *Brockum Int'l*, 551 F.Supp. at 1055–56. The decision also decried the last-minute emergency presentation of the application and observed that any future application by plaintiff for such relief would be rejected because there was no need to proceed in that exigent fashion.

In *Rock Tours*, a jurisprudential analysis resulted in the denial of the injunction. The decision concluded that the "action is not justiciable for purposes of *ex parte* injunctive relief," *Rock Tours*, 507 F.Supp. at 66, because in personam jurisdiction was unclear and the proceeding lacked the requisite adversary interest. "Basically, plaintiffs seek through this Court a mechanism under which to seize and impound the allegedly bootleg merchandise to be sold by defendants. Counsel for plaintiffs have emphasized that the likelihood of a trial on the merits of the Lanham Act claim is small, if at all.... It would appear ... that this controversy ... may be more appropriately addressed to the legislative or executive branches." *Id.*[3]

Plaintiffs claim that a nationwide injunction is imperative and rest their legal entitlement on Fed.R.Civ.P. 65(d), which extends the court's injunctive power to "those persons in active concert or participation" with the parties. However, the necessary predicates for enjoining such persons, whoever and wherever they may be, is in per-

---

1. Counsel immediately asked for reconsideration of the interlineated limitation. I deferred doing so as it appeared that the only concert at which the temporary restraining order would be available before the hearing on May 16, 1988 was the one in Philadelphia.

2. In plaintiffs' 21–page memorandum, nine districts are reported to have granted the relief requested. No arguments, reasons, concerns, or authority to the contrary are noted. The two cases cited above were found by "Shepardizing" a decision cited in plaintiffs' memorandum: *Joel v. Various John Does*, 499 F.Supp. 791 (E.D. Wis.1980), which arose in the same district two years before *Brockum Int'l*. Brockum International is the predecessor, according to plaintiffs' counsel, of the licensee plaintiff of the similar name in the present action.

3. Similar concerns were raised by me in the hearing held on May 16, 1988.

sonam jurisdiction and venue, neither of which have been adequately established by a competent showing in this action. As stated to counsel at the continued hearing, as compelling and worthwhile as plaintiffs' objectives may be, the procedural means of accomplishment must be provided by law and must be carefully observed. This is particularly so in an *ex parte* proceeding. In these regards, counsel must be vigilant in discharging their duties as officers of the court, including articulating correct statements of the law, disclosing adverse authority, and avoiding a misuse of court orders.[4] They should recognize that the existence of an economic or societal problem does not necessarily mean that judicial power can or must deal with it.

I am not convinced that an injunction is the only realistic way to control bootleg merchandising at these concerts. Moreover, the use of plainclothes personnel to serve and enforce court orders of this type may be more conducive to violence than to discouraging bootlegging. For the reasons noted, I am reluctant to issue an injunctive order having extra-territorial effect. Moreover, enforcement problems make such an order potentially unduly complex.[5] Since no other AC/DC concert will be given in this district as part of the present tour, the temporary restraining order has fulfilled its purpose, and any continuation of injunctive relief would be academic and purposeless. So viewed, plaintiffs' application should not be granted. It is moot. An order will be entered.

### ORDER

AND NOW, this 19th day of May, 1988 plaintiffs' application for a preliminary injunction is denied, and the temporary restraining order entered May 6, 1988 is dissolved, with security to be returned when this order becomes final.

---

**4.** The trial judge has "at least some role" in enforcing the ethical obligations of lawyers. *Golden Eagle Distrib. Corp. v. Burroughs Corp.,* 801 F.2d 1531, 1539, n. 3 (9th Cir.1986) (citing *Roadway Express, Inc. v. Piper,* 447 U.S. 752, 766–67, 100 S.Ct. 2455, 2464, 65 L.Ed.2d 488 (1980); *Eash v. Riggins Trucking Inc.,* 757 F.2d 557, 564–65 (3d Cir.1985) (en banc)).

**5.** The enforcement proposal suggested by plaintiffs, that the order be entered here but enforced in the federal courts where the violations occur, is unsatisfactory. The same legalistic problems remain and may be compounded by local laws and different fact settings as well as the views of other judges. The practical problems, while seemingly reduced from my standpoint, would involve instituting a new action in each district in which a seizure was made. Another possibility would be that counsel would simply utilize the order to effectuate the seizures through private guards and security personnel wherever the concert tour happened to be. To enter an order accommodating that purpose would, in my opinion, be an abuse of judicial power.