**DIMENSION DATA NORTH AMERICA, INC., Plaintiff,**

v.

**NETSTAR–1, INC.; Michael Butters; and Ed Norris, Defendants.**

**No. 5:04–CV–977–FL(1).**

United States District Court, E.D. North Carolina, Western Division.

Feb. 2, 2005.

---

Robert C. Stephens, Hamilton, Gaskins, Fay & Moon, Charlotte, NC, for plaintiff.

Christopher M. Olds, Kilpatrick Stockton, Kurt E. Lindquist, II, Kilpatrick Stockton, Charlotte, NC, for defendants.

## ORDER

FLANAGAN, Chief Judge.

This matter is before the court on plaintiffs' motion for expedited discovery, filed December 30, 2004. (DE # 3). Defendants responded on January 21, 2005. In this posture, this matter is ripe for ruling. For the following reasons, the court denies plaintiffs' motion for expedited discovery.

## STATEMENT OF THE CASE

Plaintiff filed a complaint in this case on December 27, 2004, seeking, *inter alia*, monetary and injunctive relief against defendants based on their alleged breach of confidentiality agreements and unauthorized disclosure of trade secrets. The individual defendants in this case, Michael Butters and Ed Norris, are former employees of plaintiff Dimension Data North America, Inc. ("DDNA"), who left work with DDNA on December 3, 2004, and began working with defendant NetStar–1, Inc. ("NetStar") on December 9, 2004.

Defendant Butters was served a copy of the complaint by certified mail on December 29, 2004. Defendants NetStar and Norris were served by certified mail on January 3, 2005. On January 21, 2005, defendants filed a motion for extension of time to respond to the complaint through and including February 14, 2005. On January 21, 2005, defendants, through counsel, also filed a memorandum in opposition to plaintiff's motion for expedited discovery.

In its motion to expedite discovery, plaintiff seeks to obtain expedited production of documents and depositions of defendants regarding the grounds for an impending preliminary injunction motion, which it plans to file after the discovery requested is complete. Specifically, plaintiff seeks:

1. "to obtain documents and depose Mr. Norris and Mr. Butters for the purpose of determining what knowledge they have about improper contacts between the Defendants and clients or prospective clients of DDNA;"

2. "to obtain documents and depose Netstar pursuant to Rule 30(b)(6) of the Federal Rules of Civil Procedure to depose someone familiar with Netstar's clients, revenues, and practices and policies regarding the solicitation of new employees and customers."

(Pl's Mot., p. 2). Plaintiff requests that defendants produce documents and attend their deposition in advance of the time other-

wise allowed by the Federal Rules of Civil Procedure so that plaintiff "may adequately prepare for a hearing on its Motion for Preliminary Injunction." (*Id.*). Specifically, plaintiff moves for an order by the court requiring defendants, by January 28, 2005, "to make available for copying and inspection documents responsive to Plaintiff's First Requests for Production of Documents attached . . . as Exhibit A;" and to permit plaintiff "to take the depositions of each of the Defendants at any time after January 28, 2005 . . . to be completed no later than February 28, 2005."

### FACTUAL SUMMARY

In support of its motion, plaintiff highlights several allegations of its complaint, which may be summarized as follows. Defendant Butters signed a confidentiality and non-disclosure agreement with plaintiff's predecessor in interest, TimeBridge, on April 27, 1998. Defendant Norris signed a confidentiality agreement and non-compete agreement with TimeBridge, on June 15, 2000. Upon merger between TimeBridge and DDNA, plaintiff acquired all right, title and interest to such agreements, and defendants Butters and Norris continued employment with plaintiff.

Plaintiff's business involves, in part, sales of technology integration services to customers. While employed with plaintiff, Butter was a "Sales Representative" and "Senior Account Manager," which gave him access to plaintiff's confidential and proprietary trade secrets. Norris was employed as a "Manager of Delivery Engineers" and as a "Solutions Architect," which gave him access to plaintiff's confidential and proprietary trade secrets and information. Both Norris and Butters resigned from plaintiff as of December 3, 2004.

After their resignation, Butters and Norris informed plaintiff that they were going to work for NetStar and would be opening NetStar's Raleigh, North Carolina, office. Plaintiff alleges that, since joining NetStar, Norris and Butters have

"converted, misappropriated and disclosed DDNA's confidential and proprietary information and trade secrets including, but not limited to, bids and proposals, business methods, formulas, product specifications, contracts, customer or potential customer lists, marketing and technical information to third parties, including, but not limited to, Netstar and its principals and employees in violation of Butters' Confidentiality Agreement, Norris' Confidentiality Agreement, and North Carolina statutory and common law."

(Pl's Mem., p. 4 (citing Compl., ¶ 38)). Upon information and belief, Norris and Butters have used such confidential and proprietary information to solicit business on behalf of NetStar "from DDNA clients who were part of Mr. Norris' and Mr. Butters' portfolio while at DDNA, including, among others, General Parts, Inc., MBM Corporation, and North Carolina Farm Bureau." (*Id.* (citing Compl., ¶ 40)). "Cisco Systems, Inc., whose products DDNA resells, has notified DDNA that General Parts, Inc. and MBM Corporation have informed Cisco Systems that they want to transfer their business from DDNA to Netstar." (*Id.* (citing Compl., ¶ 41)).

In opposition to the motion to expedite discovery, defendants have alleged additional facts, providing, *inter alia*, information concerning DDNA's and NetStar's overlapping competitive market, and affidavits by Norris and Butters denying any prohibited conduct under contract or law.

### DISCUSSION

Although specific standards for evaluating expedited discovery motions are not set out in the Federal Rules of Civil Procedure, the Rules provide the court with authority to direct expedited discovery in limited circumstances. As one court in this circuit recently noted, "Federal Rules of Civil Procedure 26(d), 30(a), 33(b), 34(b) and 36 give this Court the power to adjust the timing requirements imposed under Rule 26(d) and if warranted, to expedite the time for responding to the discovery sought." *Physicians Interactive v. Lathian Sys.*, 2003 U.S. Dist. LEXIS 22868, *11–12, 2003 WL 23018270, *4, (unpublished) (D.Va., Dec. 5, 2003).

Specifically, Rule 26(d) provides that "except . . . when authorized under these rules or by order . . . a party may not seek discov-

ery from any source before the parties have conferred as required by Rule 26(f)." FED. R. CIV. P. 26(d). Rule 26(b) provides the court with broad discretion in structuring discovery, stating "for good cause, the court may order discovery of any matter relevant to the subject matter involved in the action." FED. R. CIV. P. 26(b)(1).

The rules pertaining to each category of discovery also allow for alterations in timing based upon court order. For instance, Rule 34 states that "Without leave of court . . . a request may not be served before the time specified in Rule 26(d)." FED. R. CIV. P. 34(b) (pertaining to production of documents). Rule 33(a) and Rule 36 provide identical authority with regard to interrogatories and requests for admission. Finally, pertaining to depositions, Rule 30 states that "A party must obtain leave of court, which shall be granted to the extent consistent with the principles stated in Rule 26(b)(2), if . . . a party seeks to take a deposition before the time specified in Rule 26(d)." FED. R. CIV. P. 30(a)(2) (emphasis added).

In *Crown Crafts, Inc. v. Aldrich*, 148 F.R.D. 151, 152 (E.D.N.C.1993), for purposes of evaluating an expedited discovery request, this court followed the approach of a New York district court and applied several preliminary injunction factors:

> [C]ourts should require the plaintiff to demonstrate (1) irreparable injury, (2) some probability of success on the merits, (3) some connection between the expedited discovery and the avoidance of the irreparable injury, and (4) some evidence that the injury that will result without expedited discovery looms greater than the injury that the defendant will suffer if the expedited relief is granted.

148 F.R.D. at 152 (quoting *Notaro v. Koch*, 95 F.R.D. 403, 405 (S.D.N.Y.1982)).

The approach in *Crown Crafts* and *Notaro*, borrowing portions of the preliminary injunction standard, has been criticized by other courts. For instance, in *Merrill Lynch, Pierce, Fenner & Smith v. O'Connor*, 194 F.R.D. 618, 623 (N.D.Ill.2000), the court noted that "where, as here, a plaintiff seeks expedited discovery in order to prepare for a preliminary injunction hearing, it does not

make sense to use preliminary injunction analysis factors to determine the propriety of an expedited discovery request." *See Merrill Lynch*, 194 F.R.D. at 624. Rather, "it makes sense to examine the discovery request, as we have done, on the entirety of the record to date and the reasonableness of the request in light of all the surrounding circumstances." *Id.*

Recently, courts have found the reasonableness test used in *Merrill Lynch* to be more adaptable to the varying circumstances in which expedited discovery is requested. *See e.g., Entertainment Technology Corp. v. Walt Disney Imagineering*, 2003 WL 22519440, 2003 U.S. Dist. LEXIS 19832, (unpublished) (E.D.Pa., Oct. 2, 2003); *Pod–Ners, LLC v. Northern Feed*, 204 F.R.D. 675, 676 (D.Colo.2002) ("Rule 26(d), Fed.R.Civ.P., allows [the court] to order expedited discovery upon a showing of good cause"); *Yokohama Tire Corp. v. Dealers Tire Supply, Inc.*, 202 F.R.D. 612, 614 (D.Ariz.2001) ("[A]bsent credible authority to the contrary, the court adopts a good cause standard."); *Semitool, Inc. v. Tokyo Electron Am.*, 208 F.R.D. 273, 275 (D.Cal.2002) (noting that *Notaro* and *Crown Crafts* were decided before the amendments to Rule 26); *Philadelphia Newspaper, Inc. v. Gannett Satellite Information Network, Inc.*, 1998 WL 404820, 1998 U.S. Dist. LEXIS 10511, (unpublished) (E.D.Pa., July 15, 1998) (finding *Notaro* test inapplicable where parties anticipate later preliminary injunction determination).

■ Under the circumstances of this case, where plaintiff requests expedited discovery in preparation for a preliminary injunction determination, an expedited discovery test limited strictly to the *Notaro* factors is not appropriate. Rather, a standard based upon reasonableness or good cause, taking into account the totality of the circumstances, is more in keeping with discretion bestowed upon the court in the Federal Rules of Civil Procedure. FED. R. CIV. P. 26(b); FED. R. CIV. P. 30(a)(2).

■ In this case, the court finds that expedited discovery is not reasonable at this stage of the proceedings. This conclusion is informed by several factors. First, plaintiff's

motion for expedited discovery is not reasonably timed, where, as here, plaintiff has not yet filed a temporary restraining order or a motion for preliminary injunction, setting out in detail the areas in which discovery is necessary in advance of a determination of preliminary injunctive relief. In the Fourth Circuit, where the circumstances permit, courts have allowed parties to engage in expedited discovery in preparation for a *hearing* on preliminary injunction. *See e.g., KBG Holding Corp. v. Union Bank,* 56 Fed. Appx. 111, 114 (4th Cir.2003) ("The parties engaged in expedited discovery in preparation for the ... hearings on the competing motions for preliminary injunction."); *CIENA Corp. v. Jarrard,* 203 F.3d 312, 315 (4th Cir.2000) (remanding to give the defendant an opportunity to conduct expedited discovery in advance of district court's reconsideration of preliminary injunction motion); *Dan River, Inc. v. Unitex Ltd.,* 624 F.2d 1216, 1220 (4th Cir.1980) (noting that the district court "set a hearing on the motion for a preliminary injunction and directed the parties to engage in discovery on an expedited basis prior to that hearing"). Here, as no such hearing or determination is pending, expedited discovery is premature. Of course, as this case develops, if the need for a hearing arises, expedited discovery, or other form of bifurcated or limited discovery, may be appropriate.

Second, the discovery requested is not narrowly tailored to obtain information relevant to a preliminary injunction determination. Rather, plaintiff requests discovery covering a broad range of NetStar's business practices before and after Butter and Norris joined the company. For example, in Exhibit A to its motion, plaintiff seeks "All of Netstar's accounts receivables listings between June 1, 2004, involving entities in North Carolina." (Request # 9). Plaintiff also seeks "All Documents relating to or containing any information about any communications Netstar, Mr. Norris or Mr. Butters had with any North Carolina individuals of entities regarding the provision of services by Netstar...." (Request # 3). These requests, as well as many others in Exhibit A, are overly broad where, in its complaint, plaintiff alleges a loss of business from only three corporate customers due to actions on the part of Butters and Norris. (Compl., ¶¶ 40–41). An expedited discovery request could be more narrowly tailored to focus on information believed to be probative to the preliminary injunction analysis.

Third, plaintiff has not made an adequate showing that it will be irreparably harmed by delaying the broad-based discovery requested until after the initial conference between the parties pursuant to Rule 26, or at least until a preliminary injunction determination is pending before the court. Assuming, *arguendo,* that plaintiff's allegations regarding breach of confidentiality agreements are correct and that plaintiff will prevail at trial on the merits, the damage associated with such breach in the intervening time period can be readily calculated and awarded to plaintiff. Plaintiff has not otherwise alleged that its entire business will be irreparably damaged or lost due to the actions of defendants in the intervening time period. Finally, plaintiff has not alleged that the discovery sought will be unavailable in the future or is subject to pending destruction if it is not taken now. Accordingly, the court finds that plaintiff will not be irreparably harmed by engaging in standard discovery procedures as set out in the Federal Rules of Civil Procedure.

In summary, given the timing of plaintiff's motion, the absence of narrowly-tailored discovery requests in advance of a preliminary injunction hearing, and the lack of evidence that plaintiff will be irreparably harmed by delaying the discovery requested until after the Rule 26 conference or in advance of a preliminary injunction hearing, expedited discovery is not reasonable.

## CONCLUSION

Based on the foregoing, plaintiffs' motion for expedited discovery is DENIED. At this time, the case will proceed at the pace set forth in the Federal Rules of Civil Procedure.